UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JAMES GOOSLIN,

      Movant,

v.                          Case No. 2:08-cv-00001
                               Case No. 2:05-cr-00180-1

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On January 2, 2008, Movant, James Gooslin (hereinafter "Defendant"), with the assistance of counsel, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 172), supported by a memorandum (# 173) and his affidavit (# 174). The United States filed a response in opposition (# 179), with exhibits. Defendant did not file a reply but, in a *pro se* document entitled "motion to sue attorney Michael R. Cline," he raised additional grounds for relief. By Order entered October 9, 2008 (# 187), the court stated that the additional grounds would be considered.

Defendant was convicted by a jury of engaging in a conspiracy to distribute 10 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One), three counts of distribution of cocaine (Counts Two through Four), and two counts of possession of cocaine with intent to distribute (Counts Five and Six). (Superseding indictment, # 84; jury verdict, # 112). He is serving a sentence

of 188 months, to be followed by a five year term of supervised release (Judgment Order entered January 22, 2007, # 150). Forfeiture proceedings resulted in entry of judgment against Defendant in the amount of $154,000 (# 152).

A notice of appeal (# 156) was filed by the attorney representing Defendant with respect to the instant motion, but it was dismissed on his motion (# 169).

### Facts of the Case

The presentence investigation report ("PSR") provides a brief synopsis of the government's evidence against Defendant.

> 12.  This investigation was conducted by the West Virginia State Police along with the assistance of the Mingo County Sheriff's Department. Under the direction of the investigating agencies, ten controlled purchases of cocaine were made through the use of two confidential informants. The controlled purchases were conducted on November 19, 2003; December 10, 2003; December 22, 2003; January 2, 2004; January 7, 2004; December 12, 2004; December 22, 2004; and February 23, 2005. They all occurred either outside of the residence of the defendant, James Gooslin, or in a camper trailer owned and maintained by the defendant which was located across the street from his residence in North Matewan, West Virginia. Most of the drugs were sold by the co-defendant, Barry Atwood, who worked from the defendant's residence selling the drugs in exchange for a share of the cocaine. Through trial testimony, it was determined that James Gooslin was in charge of this operation and was the money man behind the purchases of all the drugs.

(PSR, ¶ 12, at 5-6.)

In the Findings of Fact and Conclusions of Law Memorandum Opinion and Order concerning the forfeiture of $154,000, entered by the presiding District Judge, the Hon. John T. Copenhaver, Jr., the

2

facts presented to the jury were summarized:

> Count One of the Superseding Indictment charged a drug conspiracy offense committed by the defendant for a period of 15 months, that is, conspiracy to distribute more than five kilograms of cocaine from at least November 2003 to February 28, 2005. * * *

> The defendant admitted in a statement given to West Virginia State Trooper Mike Smith, at the time of execution of the search warrant on Gooslin's residence, that he had been selling cocaine for 18 months. (Tr. 48-59, Govt. Ex. 12). * * * Trooper Smith estimated that, on the "low end," the defendant sold over six kilograms of cocaine during the 18 month period that Gooslin admitted selling it. (Tr. 59). * * *

> The defendant further admitted to Trooper Smith that he was selling the half-gram units of cocaine for $50 per unit. (Tr. 59; Govt. Ex. 12). Government witnesses Timothy Justice, Samantha Moore and co-defendant Atwood testified at trial that they purchased half-gram units of cocaine from, or sold half-gram units of cocaine on behalf of, the defendant for $50 per unit. (Tr. 100-01; 103-04; 120; 135-37). * * *

> Trooper Smith, utilizing Timothy Justice and Samantha Moore as cooperating individuals in the investigation, made . . . controlled buys from the defendant . . . .

(# 152, at 2-4.)

### Grounds for Relief

The § 2255 motion, memorandum, and affidavit assert that Defendant was denied effective assistance of counsel by his trial attorney, Michael R. Cline[1] in the following respects:

1.  A motion to suppress the evidence seized pursuant to a search warrant should have been filed;

---

[1] Michael R. Cline is recently deceased.

3

2.   An investigation of witness Samantha Moore should have been conducted;

3.   An investigation of witness Timothy Justice should have been conducted;

4.   A motion to suppress Defendant's statement to Trooper Smith should have been filed;

5.   Defendant's mental competency should have been investigated; and

6.   An investigation of Defendant's neighborhood should have been conducted.

Defendant's *pro se* "motion to sue attorney Michael R. Cline" (# 183) adds the following allegations of ineffective assistance of counsel:

A.   Mr. Cline failed to show the jury a lease receipt, signed by Donald Barry Atwood, for the property where the drugs were found;

B.   Mr. Cline failed to cross-examine Samantha Moore to inform the jury of her criminal history and her motive to help her husband by serving as an informant;

C.   Mr. Cline failed to inform the jury, through cross-examination of Timothy Justice, that Justice received $600 from the government, and that Justice had a criminal record in Kentucky;

D.   Mr. Cline failed to pursue a motion to suppress Defendant's statement on the grounds that Defendant cannot read or

4

write and did not knowingly and intelligently make the statement;

E.   Mr. Cline failed to present Defendant's mental health records to the jury;

F.   Mr. Cline told Defendant that "the judge would not let him do his job;"

G.   Mr. Cline failed to assist Defendant in filing objections to the presentence report;

H.   Mr. Cline failed to inform the jury that the government took Defendant's guns, sold them, and tried to add four or five years to his sentence for the guns;

I.   Mr. Cline just sat at the trial and did not open his mouth.

### Effective Assistance of Counsel

The Supreme Court addressed the right to effective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.  The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  <u>Id.</u>, at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  <u>Id.</u>, at 688-89.

In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the

5

wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id., at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  Id., at 697.

1. and A. Failure to file a motion to suppress evidence

The § 2255 motion alleges that there are two parcels of real estate, with a public road between them; co-defendant Donald Barry Atwood rented the parcel across the road from Defendant's home.  (#172, at 2.)  The motion asserts that no illegal drugs were found in Defendant's home and thus it was ineffective assistance of counsel not to file a motion to suppress the evidence found on the property rented by Atwood.  Id.

Defendant's *pro se* motion provides additional information [spelling corrected]:

> The property across the road from James Gooslin, a/k/a Jimmy, where the drugs was found was leased to Donald Barry Atwood.  Therefore, the question of an unreasonable search and seizure could have been raised, but Michael Cline did not motion to suppress the evidence

6

so the court could made a ruling.  James Gooslin a/k/a
Jimmy had the receipt, where the property was leased to
Donald Barry Atwood in his pocket when he was arrested.
The court has got a copy of the receipt.  Butner NC where
James Gooslin a/k/a Jimmy went for a mental evaluation
has a copy of the lease receipt.  But attorney Michael
Cline did not show the lease receipt with Donald Barry
Atwood's signature on it to the jury.  This was
ineffective assistance of counsel for failure to show the
lease receipt to the jury.

(# 183, at 2.)

The government's response states that "[s]everal ounces of

cocaine were obtained from the trailer across the street from

defendant's house."  (# 179, at 7.)

The search warrant issued by the undersigned on February 24,

2005, authorized law enforcement officers to search

Residential property of James Gooslin located along WV
Rt. 65 approximately 300 feet directly behind the Dollar
General in North Matewan, Mingo County, WV., being a
white/beige double-wide trailer with a green roof and
wooden privacy fence and appurtenances thereto.  (See
Attachment B for further description of property to be
searched.)

ATTACHMENT B

Residential property located in an area commonly
referred to as North Matewan, Mingo County, West
Virginia.  This residential property of James Gooslin
consisting of a white/beige double-wide trailer with a
green roof and wooden privacy fence that is positioned on
a small amount of flat acreage with several small
outbuildings in close proximity to the trailer that
appear to be utilized for tending farm animals.

The said property is located along WV Route 65
approximately 300 feet directly behind the Dollar General
in North Matewan.  It is the only residence and
outbuilding fitting this description.  Investigators have
traveled to this residence and are familiar with its
location.  An aerial photograph of this residence is

attached and identified as Attachment A.

In the Matter of the Search of Residential property of James Gooslin, No. 2:05-mj-00031; # 179, Ex. B.

The return of the search warrant reflects that the warrant was executed on February 28, 2005.  It includes an inventory of the property taken pursuant to the warrant:

- Approximately 3 to 4 ounces of cocaine
- One set of scales
- Numerous baggies and ties
- Various paper documents
- Two video tapes
- One stainless Taurus manufacture pistol .40 caliber SR# SUK02683 with ammunition
- One American Arms .22 caliber revolver SER# D83839 with ammunition
- One Taurus revolver .38 special SR# XD80715 with ammunition
- One Interarms manufacture pistol 9mm SR#025901
- One Winchester .22 magnum rifle, pump action, SR# B778789
- One Sears manufactured bolt action shotgun 166A [?] loaded with one shell, no serial number located
- Approximately two hundred and six (206) hydrocodone pills
- Two thousand nine hundred seventy-two dollars ($2,972.00) in U.S. cash currency.

Id.

At the trial, West Virginia State Trooper Michael Smith was questioned about the execution of the search warrant by Assistant United States Attorney ("AUSA") Erik Goes as follows:

Q.  And what happened when you got there?

A.  When we approached the defendant's residence, we drove up the driveway as it goes up to his residence, and he and Mr. Atwood were observed outside in the yard area near a building right – that was set right next to a camper.  They were – they were approached by law

enforcement.  When he was approached by law enforcement,
he was observed by one of the agents there to appear to
have thrown something down on the ground.  I patted down
Mr. Gooslin for weapons. * * * In his pants pocket, there
was 25 hydrocodone pills or 25 tablets that looked to me
like they were hydrocodone pills, and he also had 25
individual prepackaged half gram units of cocaine in his
pocket. * * * In his other pocket was cash currency. * *
* It was over [$]1,000.

Q.  And did you continue executing the search warrant?

A.  Yes.  Yes.  We – at that point, you know, we
explained the nature of why we were there.  We told him,
hey, we've got a search warrant.  You are not under
arrest, but we're going to search your residence, search
the area around.  About the time we – we get finished
searching him and finding the cocaine in his pockets,
there was two other officers, again, that were looking
where he threw something, and they obtained with – or
they returned or held up and showed me that they had a
couple of silver I call them bricks, but objects that
appeared to be wrapped in like silver – silver duct tape.

(Tr. Trial, # 179-2, Ex. A-I, at 39-41.)

The testimony established that Government's Exhibit 5 (two
ounces of cocaine, 12 one-half grams of cocaine, and 55 one-half
grams of cocaine) is "the silver bundles that we found next to
where he was standing there."  Id., at 42.

Government Exhibit 6 (25 "additional premeasured out or
prepackaged pieces of cocaine or half gram things of cocaine that
are wrapped up in the plastic bag, again with the same bread ties
on it") was found in Defendant's front pocket.  Id., at 44-45.

Trooper Smith further stated that Government's Exhibit 7 is
184 hydrocodone pills which were found in a plastic bag "[i]n a
little building beside – beside the defendant's camper right next

9

to where he was standing when we drove up to his house with the search warrant." Id., at 43, 72.

Government's Exhibit 24 (25 hydrocodone pills in a prescription pill bottle) were in Defendant's shirt pocket. Id., at 44-45, 71-72. Under questioning by Judge Copenhaver, Trooper Smith explained that he believed that there were 25 pills, 15 blue ones and 10 white ones, and the blue ones were in the pill bottle found in Defendant's shirt pocket, and the white ones were in cellophane in Defendant's pocket. Id., at 46-47. The matter was deferred until the testimony of the forensic chemist to avoid tampering with the evidence. Id., at 47.

Trooper Smith stated that a set of digital scales, Government's Exhibit 13, was found in Defendant's residence. Id., at 48, 92. He testified about the difference between Defendant's residence and the camper:

> A.   The camper is – is just that, it's a camper.  It's
> like a pull-behind type camper, something you might take
> on vacation.  It's probably – the way I remember it, it
> was probably a camper that was suitable to maybe sleep
> three or four people.  You know the kind of a smaller
> camper that you pull behind a vehicle?  His residence was
> a double-wide trailer.  It had a privacy fence and had a
> fence around it, and had like furniture and stuff in it,
> as opposed to the camper that just had basically the
> interior of a camper.  You know, it didn't have the
> things that you and I or anybody would have in their real
> home that they – that they slept in.
>
> Q.   And how far is the camper from the residence, best
> guess?
>
> A.   You can throw a rock, you know, to hit his camper
> from the house.  I would say probably, just guessing off

10

the top of my head, I'd say 30 yards, less than 100 feet maybe, somewhere in that area.

Id., at 48-49.

Government's Exhibit 14 (five boxes of freezer bags, one bundle of bread ties, and two boxes of Ziploc bags) was found in the camper.  Id., at 49-50.

Government's Exhibit 8 (55 prepackaged half-gram bundles of cocaine) was found inside one of the "bricks" wrapped in silver duct tape dropped by Defendant as the police arrived.  Id., at 68-70.

All the drug evidence was admitted without objection.  Id., at 45-46, 70, 77-78.  No motion to suppress evidence seized pursuant to the search warrant was filed.  To summarize, the only drug evidence which was seized from a place other than Defendant's person, and the area where he was observed to throw something, was the plastic bag of 184 hydrocodone pills found in a small building near the camper (Government's Exhibit 7).  Hydrocodone is a Schedule III controlled substance; as noted in the PSR, there was an insufficient quantity of hydrocodone to increase Defendant's guideline range, so it was not considered for the purpose of sentencing.  (PSR, ¶ 17, at 7.)  The seized weapons were not offered into evidence (the shotgun was mentioned in passing).  Id., at 93.

On cross-examination, Trooper Smith testified that all the controlled buys took place outside Defendant's residence.  (Tr.

11

Trial, # 179-2, Ex. A-I, at 89-90.)   The transactions with the confidential informants took place in the "general area here outside of the driveway, . . . and in the camper." <u>Id.</u>, at 90. Trooper Smith explained that "all the drug buys were outside in the parking area right here" [apparently gesturing to a photograph]. <u>Id.</u>, at 91.   Mr. Cline noted that the area is "outside the chain-link fence, outside the privacy fence, and across the road."   <u>Id.</u>

In <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 384 (1986), the Supreme Court held that "the failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." Even if the motion is potentially meritorious, the decision whether to file a motion to suppress is a tactical one.   In <u>Strickland</u>, the Supreme Court recognized that defense attorneys must have "wide latitude" to make these types of tactical decisions.   466 U.S. at 688-89.   The search warrant authorized a search of "residential property of James Gooslin consisting of a white/beige double-wide trailer with a green roof and wooden privacy fence that is positioned on a small amount of flat acreage with several small outbuildings in close proximity to the trailer;" all of the drug evidence was seized in the area authorized by the warrant.   The undersigned proposes that the presiding District Judge **FIND** that Mr. Cline's failure to file a motion to suppress the evidence was an appropriate tactical decision within the wide range of reasonable professional assistance.

In addition, it is apparent that Defendant suffered no prejudice as a result of Mr. Cline's failure to file a motion to suppress. The majority of the drugs which were introduced into evidence where those found on Defendant's person or on the ground where the officers saw him throw objects. The drugs found in the small building near the camper consisted of hydrocodone pills, which had no effect on Defendant's sentence. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant was not prejudiced by Mr. Cline's failure to file a motion to suppress the seized evidence.

## 2. and B. Failure to investigate and cross-examine Samantha Moore

Defendant asserts that there was no third-party witness to any drug transaction between Moore and Defendant. He contends that her criminal history and the fact that Moore was obtaining favors from the government for her husband should have been explored on cross-examination for the jury to hear in considering Moore's credibility. Mr. Cline's alleged failure to do so constituted ineffective assistance of counsel. (# 172, at 3; # 183, at 3.)

The United States responds that Barry Atwood witnessed the drug transactions between Samantha Moore and Defendant, and that the transactions were recorded. (# 179, at 10 n.4.) The government further contends that Mr. Cline did investigate Ms. Moore with the benefit of discovery provided by the United States. (# 179, at 9.) The United States provided Ms. Moore's criminal

record to defense counsel twice, and Mr. Cline's affidavit includes
his statement that he received the criminal histories. (# 179, Ex.
E, ¶ 2; Ex. G.)  By letter dated September 29, 2005, the United
States also disclosed to Mr. Cline that Samantha Moore stated that

> her husband was charged with a driving on suspended
> (possibly for a DUI).  She was working for lenience on
> these charges, a fact previously disclosed on October 20,
> 2005 [sic; September 26, 2005].  Though the investigating
> officers of the Gooslin/Atwood matter did not initiate a
> dismissal, the charges were dismissed (or reduced to time
> served) by the local police due to her cooperation in
> making controlled buys.

Id., Ex. H.

At trial, Samantha Moore testified on direct examination that
Defendant was her drug dealer.  (Tr. Trial, # 179-3, at 99.)  Barry
Atwood was also present "at times."  Id., at 100.  She stated that
she contacted law enforcement to offer to work as a confidential
informant to help her husband get out of trouble for driving on a
revoked license for third offense DUI.  Id., # 179-4, at 101-02.
Her husband's charges were dismissed with prejudice.  Id., at 103.

On cross-examination, Mr. Cline questioned Ms. Moore about her
offer to work as a confidential informant.  She stated: "They told
me that it could help, but it - I guess it all boiled down to the
judge that was trying Roger, but if I did a good job, they would
put a word in to the prosecutor, you know, tell him, you know, I
had worked for them and I had done a good job, and it might help is
what they said, it might."  Id., at 108-9.  He also elicited her
admission that she had been charged in Mingo County for driving

14

violations and bad checks.  Id., at 109.

The undersigned proposes that the presiding District Judge **FIND** that Mr. Cline cross-examined Ms. Moore so that the jury was well aware that she had prior criminal charges and she worked as an informant to help her husband, and that Mr. Cline's representation of Defendant in this respect did not constitute ineffective assistance of counsel.

### 3. and C. Failure to investigate and cross-examine Timothy Justice

Defendant alleges that no criminal history of Timothy Justice was obtained.  (# 172, at 3-4.)  Defendant further asserts that the jury did not learn that Justice received $600 in payment for his efforts as a confidential informant.  (# 183, at 4.)

The government's response states that Mr. Justice's criminal history was disclosed to defense counsel, and that both his prior criminal record and his payments for being an informant, were elicited on direct examination.  (# 179, at 11.)

Mr. Justice testified on direct examination that he became an informant "to make money," and that he received a total of $600 for making three buys from Jimmy Gooslin and Barry Atwood.  (Tr. Trial, # 179-4, at 117-18.)  He admitted that he had been in trouble with the law for writing bad checks.  Id., at 118.  A video of the drug transaction with Defendant was shown to the jury.  Id., at 128-132. Mr. Cline chose not to cross-examine the witness.  Id., at 132.

The undersigned proposes that the presiding District Judge

**FIND** that Mr. Cline's failure to cross-examine Mr. Justice did not constitute ineffective assistance of counsel because the jury was already well aware of Mr. Justice's motive to serve as a confidential informant and of his prior criminal charges. Moreover, the United States has suggested that Mr. Cline was aware that Mr. Justice feared retaliation from Defendant and his family (# 179, at 11 n.5), which would be another strong reason to avoid questioning him.

4. and D.  Failure to file a motion to suppress Gooslin's statement

Defendant claims that he "cannot read or write and did not knowingly and intelligently make any statement to a police officer, but he did what he was told to do by the officer." (# 172, at 4; # 183, at 4-5.)  He asserts that Mr. Cline should have moved to suppress his statement.  Id.

The United States notes that Defendant testified in his own behalf with respect to the statement and that Mr. Cline challenged the weight of the statement as opposed to its voluntariness.  (# 179, at 12.)  The voluntariness of the statement was supported by the testimony of Trooper Smith, the procedure for obtaining the statement, and Defendant's signature and initials on the statement. Id.

Trooper Smith testified in detail concerning his advice of rights to Defendant.  (Tr. Trial, # 179-4, at 54-58.)  He noted that Defendant stated that he could not read well, and that Smith

16

read the rights to him.  Id., at 56.  Defendant initialed each
entry of the advice of rights form as Trooper Smith went over them
with him, and signed the form.  Id., at 57-58.  Trooper Smith wrote
down his questions and Defendant's answers.  Id., at 63.  Then
Smith asked a deputy to read the statement out loud to Defendant;
Defendant confirmed that the statement was accurate, and signed it.
Id., at 63-67.

     The statement was admitted into evidence without objection as
Government Exhibit 12.  Id., at 62.  Mr. Cline did not file a
motion to suppress the statement.  Mr. Cline did not cross-examine
Trooper Smith about Defendant's statement.

     Defendant took the stand, denied that he sold controlled
substances to the confidential informants, denied that he was the
person on the video of a drug sale, and asserted that he was not
guilty.  (Tr. Trans. # 179-5, at 48-49.)

     On cross-examination by AUSA Goes, Defendant stated that he
"signed everything they put in front of me because I can't read."
Id., at 53.  He admitted that Trooper Smith read things to him, and
that he understood, but he "was tore up read bad."  Id.  He denied
the admissions contained in the statement, but he admitted that it
was his signature, that the statement was read to him, and that the
statement says it is "true and correct to the best of my
knowledge."  Id., at 53-56.

     It is apparent that Trooper Smith took great pains to obtain

a voluntary and error-free statement from Defendant.   Filing a
motion to suppress the statement would have been futile.   Mr.
Cline's decision not to file such a frivolous motion was an
appropriate tactical decision which did not constitute ineffective
assistance of counsel.   The undersigned proposes that the presiding
District Judge **FIND** that Defendant's claim as to this issue is
without merit.

5. and E. Failures regarding mental competency

     Defendant claims that his mental competency should have been
investigated (# 172, at 5), and that Mr. Cline should have
presented Defendant's medical records to the jury (# 183, at 6).

     The United States notes that Defendant's mental competency was
fully addressed by Judge Copenhaver before trial, that Defendant
was ruled to be competent, and that evidence relating to his mental
state was ruled to be inadmissible.   (# 179, at 13.)   Despite these
rulings, Mr. Cline attempted to elicit testimony before the jury as
to Defendant's mental state.   (Tr. Trial, # 179-5, at 41-44.)

     The record in this case reveals that on November 28, 2005,
Defendant's former counsel, Matthew Victor, moved that Defendant be
evaluated with respect to his competency and criminal
responsibility (# 44).   Judge Copenhaver granted the motion,
continued the trial, and directed that Defendant undergo
psychiatric and psychological examination (# 51).   Mr. Cline
assumed representation of Defendant on June 20, 2006, and a

competency hearing was conducted on June 23, 2006 (# 65).   Mr.
Cline indicated at that hearing that he was concerned about the
completeness of the mental health records, and requested additional
time to retrieve Defendant's treatment records.   Id.   His request
was granted.   Id.   Mr. Cline obtained additional mental health
treatment records and submitted them to the court in camera.   (#
69.)   The records were forward to Tanya L. Cunic, Psy.D., the
forensic psychologist who reported on Defendant (# 76).

     After reviewing the original forensic report and its addendum
prepared after review of the additional records, Judge Copenhaver
found by a preponderance of the evidence that Defendant "is not
presently suffering from a mental disease or defect rendering him
incompetent to the extent that he is unable to understand the
nature and consequences of the proceedings against him or to assist
properly in his defense."  (Order entered September 15, 2006, #
96.)  The United States promptly filed a motion in limine to
restrict Defendant from offering evidence at trial regarding his
mental state (# 99).   Mr. Cline responded, and argued that
Defendant should be allowed to explain to the jury that his
"speech, trembling, and other nervous conditions . . . are the
result of an occupational accident of which he had several years
ago and for which he has been treated since that time, including
psychological treatment . . .." (# 105.)   On the first day of
trial, Judge Copenhaver deferred ruling on the motion until it was

19

clear whether Defendant would testify.  (Tr. Trial, # 128, at 3.)

When Defendant took the stand and Mr. Cline asked him a question which elicited a response that he is treated for mental illness, the government objected, and a bench conference was convened.  Id., at 41.  The objection was sustained.  Id., at 43. Defendant's second attempt to testify concerning his visits to a psychiatrist also drew an objection which was sustained.  Id., at 44.

The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel with respect to his mental condition.  Mr. Cline insured that Defendant's complete mental health treatment history was provided to the forensic psychologist, and Mr. Cline made a good faith effort to justify his efforts to present Defendant's mental health history to the jury, despite the fact that it was irrelevant to the charges.

### 6.  Failure to investigate the neighborhood

Defendant asserts that his attorney should have investigated his neighborhood to obtain testimony from nearby residents concerning his reputation and other matters.  (# 172, at 6.)  Trial testimony established that Defendant lived in North Matewan, West Virginia, behind the Dollar General Store.  (Tr. Trial, # 179-2, at 5, 10-14.)  An aerial photograph showed that there is no other house in the immediate vicinity.  Id., at 11-12, Gov't Ex. 9.

20

Defendant had a surveillance camera outside his residence. <u>Id.</u>, #
179-3, at 53. Defendant has not offered a statement or evidence
from any purported witness from his neighborhood which would have
made a difference in the outcome of his case.

The undersigned proposes that the presiding District Judge
**FIND** that Defendant was not denied effective assistance of counsel
in this respect.

F.  Mr. Cline's statement

Defendant claims that he asked Mr. Cline why Mr. Cline did not
try to help him, why he did not show all the evidence to the jury.
(# 183, at 6.) He alleges that Mr. Cline replied that the judge
would not let him do his job. <u>Id.</u> Defendant claims that this is
ineffective assistance of counsel.

The undersigned proposes that the presiding District Judge
**FIND** that this claim does not identify the acts or omissions of
counsel that are alleged not to have been the result of reasonable
professional judgment, and thus does not state a claim for a Sixth
Amendment violation.

G.  Failure to help Defendant with PSR objections

Defendant contends that Mr. Cline did not help Defendant with
making objections to the presentence report. (# 183, at 7.) He
claims that he had to give some of his food to another inmate in
consideration of his writing objections for him. <u>Id.</u> Defendant
asserts that this constitutes ineffective assistance of counsel.

The United States did not respond to this claim because it was made after the government filed its response.

The presentence report ("PSR") indicates that Mr. Cline posed three objections on Defendant's behalf: the amount of drugs attributed to Defendant; the two-point enhancement for role in the offense; and the two-point enhancement for obstruction of justice based on Defendant's perjury at trial. Defendant submitted his own objections (# 144): the denial of a reduction for acceptance of responsibility; the reference to a dismissed charge of possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1); and alleged lack of a search warrant and failure to file a motion to suppress.

The record demonstrates that Mr. Cline filed appropriate objections on Defendant's behalf, and that Defendant's own objections were meritless. An attorney is not required to file objections which are erroneous merely because his client requests that he do so. The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied effective assistance of counsel with respect to the filing of objections to the PSR.

H.  Failure to inform the jury regarding guns

Defendant contends that the government tried "to give [Defendant] 4 or 5 years for guns" that they took from his house. He charges that the government sold the guns and that Mr. Cline did

22

not inform the jury of these actions.  (# 183, at 8.)

This claim is difficult to understand.  The undersigned assumes that Defendant is referring to the Section 924(c)(1) charge in the original indictment, which was not included in the superseding indictment on which Defendant went to trial.  The disposition of the firearms seized pursuant to the search warrant is irrelevant to whether Defendant's sentence should be vacated or set aside.  This ground for relief lacks merit, and the presiding District Judge should so **FIND**.

## I.  Mr. Cline's performance

Defendant claims that Mr. Cline just sat and never opened his mouth during the trial.  The undersigned's review of the transcript reveals that Mr. Cline made appropriate arguments, cross-examined the government's witnesses, and led Defendant through his direct examination.  This ground for relief lacks merit, and the presiding District Judge should so **FIND.**

### Recommendation

It is respectfully **RECOMMENDED** that the Section 2255 motion be denied.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings

23

in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to Defendant and to counsel of record.


   March 16, 2009                  *Mary E. Stanley*
      Date                          Mary E. Stanley
                            United States Magistrate Judge